# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |
| MICHAEL MAHER,<br><br>    Plaintiff,<br><br>v.<br><br>3M COMPANY, 3M OCCUPATIONAL SAFETY LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, and AEARO TECHNOLOGIES LLC,<br><br>    Defendants. | COMPLAINT AND JURY TRIAL DEMAND |

## COMPLAINT

Plaintiff, Michael Maher, by and through the undersigned counsel, brings this Complaint seeking judgment against Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (collectively, "Defendants") for personal injuries sustained from Defendants' defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms earplugs"). At all relevant times, the Dual-ended Combat Arms

earplugs were manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and/or sold by Defendants.

## **INTRODUCTION**

1.      Plaintiff, a United States Army Veteran, brings this suit to recover damages arising from personal injuries while in training and/or on active military duty domestically and/or abroad.

2.      Plaintiff used Defendants' dangerously defective Dual-ended Combat Arms earplugs during their service in the United States Military.

3.      Plaintiff used Defendants' dangerously defective Dual-ended Combat Arms earplugs during service which included: live fire training, vehicle use and maintenance, and/or other training and exercises in noise hazardous conditions.

4.      Defendants were aware of the defect(s) and risks associated with the Dual-ended Combat Arms earplugs, but regardless of the risk sold them to the U.S. military for more than a decade without the military and/or Plaintiff having knowledge of their defect(s) and risks.

5.      Defendants failed to warn or instruct the military and/or Plaintiff of the defect(s) and risks associated with the Dual-ended Combat Arms earplugs.

6. Use of Defendants' Dual-ended Combat Arms earplugs caused users, including Service Members (including Plaintiff), to suffer significant hearing loss, tinnitus, and/or additional injuries related to hearing.

7. Defendants' Dual-ended Combat Arms earplugs were provided to certain branches of the military (including Plaintiff's) between at least 2003 and 2015. Thus, use of Defendants' Dual-ended Combat Arms earplugs has likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to pain and suffering and loss of the pleasures of life.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are citizens of states other than the state in which Plaintiff is a citizen.

9. Plaintiff files this Complaint pursuant to PTO No. 5 and is bound by the rights, protections, privileges, and obligations of that PTO. Plaintiff states that but for the Order permitting direct filing in the Northern District of Florida pursuant to PTO No. 5, Plaintiff would have filed this Complaint in the United States District Court for the Minnesota.

10.   Personal jurisdiction over Defendants is proper in the United States District Court

for the Minnesota because Defendants: (a) conducted business in the state of

Minnesota; (b) regularly conducted and solicited business in the state of Minnesota;

(c) specifically transacted and conducted business in the state of  with Minnesota

respect to their Dual-ended Combat Arms earplugs; (d) targeted military bases in

the state of Minnesota for the sale and use of their Dual-ended Combat Arms

earplugs to be given to and/or used by military personnel within the state of

Minnesota; (e) have substantial and continuing contact with the state of Minnesota;

(f) derive substantial revenue from goods used and consumed within the state of

Minnesota; (g) purposefully directed their business activities, particularly with

respect to their Dual-ended Combat Arms earplugs, to the state of Minnesota; (h)

purposely placed their Dual-ended Combat Arms earplugs into the stream of

commerce in the state of Minnesota; (i) expected or reasonably should have

expected that their Dual-ended Combat Arms earplugs would reach the state of

Minnesota and be purchased and used by individuals in the state of Minnesota; (j)

anticipated or reasonably should have anticipated that their Dual-ended Combat

Arms earplugs would reach the state of Minnesota and be purchased and used by

individuals in the state of Minnesota; (k) engaged in a persistent course of conduct

in the state of Minnesota with respect to their Dual-ended Combat Arms earplugs;

(l) have committed a tort in whole or in part in the state of Minnesota; (m)

reasonably expected or should have expected their acts and omissions to have consequences within the state of Minnesota; and (n) intended to serve the Minnesota market, thereby purposely availing themselves to jurisdiction in the state of Minnesota and submitting to the authority of the state of Minnesota.

11.    In fact, there are multiple military bases in the state of, Minnesota which include service personnel from all four branches of the military and the  Army National Guard, Army Reserve, Air Force National Guard, Air Force Reserve, Marine Corps Reserve, and Navy Reserve, to which Defendants have provided their products.

12.    Plaintiff's claims arise out of Defendants' purposeful contacts and business conducted within the state of Minnesota.

## **PARTIES**

13.    Plaintiff Michael Maher is a citizen of Orland Park, Illinois.

14.    Defendant 3M Corporation ("3M") is a Delaware corporation with its principal place of business in St. Paul, Minnesota and is thus a citizen of both Delaware and Minnesota for diversity of citizenship purposes.

15.    Defendant 3M has a dominant market share in virtually every safety product market, including hearing protection.

16.    Defendant 3M is one of the largest companies in the country.

17.    Defendant 3M Occupational Safety LLC is a Delaware limited liability company and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

18.    Defendant 3M Occupational Safety LLC is a subsidiary of Defendant 3M.

19.    Prior to the merger of Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC with 3M Company, and 3M Occupational Safety LLC in 2008, the Aearo entities were incorporated in Delaware with a principal place of business in Indiana.  Following the merger, the Aearo entities were incorporated in Delaware with a principal place of business in Minnesota and Indiana.  The Aearo entities are citizens of Delaware and Minnesota for diversity of citizenship purposes.

20.    Defendant Aearo Holding LLC is a Delaware limited liability company with a principal place of business in Minnesota.  Defendant Aearo Holding LLC is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

21.    Defendant Aearo Holding LLC was formerly known as Aearo Holding Corporation.

22.    Defendant Aearo Holding LLC is a subsidiary of 3M Company.

23.    Defendant Aearo Intermediate LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

24.    Defendant Aearo Intermediate LLC was formerly known as Aearo Technologies Inc.

25.    Defendant Aearo Intermediate LLC is a subsidiary of Defendant 3M Company.

26.    Defendant Aearo LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

27.    Defendant Aearo LLC was formerly known as Aearo Corporation.

28.    Defendant Aearo LLC is a subsidiary of Defendant 3M Company.

29.    Defendant Aearo Technologies LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

30.    Defendant Aearo Technologies LLC is a wholly-owned subsidiary of Defendant 3M.

31.    At all relevant times and as relevant here, Defendant Aearo Technologies LLC utilized two assumed names: Aearo Company and Aearo Technologies.

## FACTUAL ALLEGATIONS

32.     The Dual-ended Combat Arms earplugs were originally created, made, manufactured, constructed, assembled, designed, formulated, tested, promoted, advertised, marketed, distributed and/or sold by Defendants Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC and Aearo Technologies LLC (collectively, "Aearo Defendants").

33.      Defendant 3M acquired Aearo Defendants in 2008, including Aearo's liabilities, and is therefore liable for Aearo's conduct as alleged herein.

34.     Defendants' Dual-ended Combat Arms earplugs were intended to provide linear and non-linear/selective attenuation hearing protection.  Non-linear attenuation is also called level-dependent hearing protection.  The earplugs were designed to purportedly provide soldiers with two different options for hearing attenuation depending upon which end of the earplugs was inserted into the ear.

35.     In addition to providing hearing protection, the Dual-ended Combat Arms earplugs were designed to help provide situational awareness by protecting against concussive disorientation effects associated with impulse noise.  The design of the yellow or non-linear end was intended to allow users, including Service Members, to hear low level sounds, such as a person speaking in close range.  This was one of the characteristics that caused the military to purchase the Dual-ended Combat Arms earplugs from Defendants.



36.    One end of the Dual-ended Combat Arms earplug (the olive end) was

marketed, advertised, and promoted by Defendants to act as a traditional earplug

and block as much sound as possible (the "closed" end or "blocked" position).

37.    The other end of the Dual-ended Combat Arms earplug (the yellow

end) was marketed, advertised, and promoted by Defendants to reduce loud impulse

sounds such as battlefield explosions and artillery fire, while also allowing the user

to hear quieter noises such as commands spoken by fellow soldiers and approaching

enemy combatants (the "open" end or "unblocked" position).

38.    Regardless of which end was inserted into the ear, at all relevant times

both ends of the Dual-ended Combat Arms were marketed, advertised, and

promoted by Defendants as providing sufficient and/or adequate protection.

39.    Defendants' Dual-ended Combat Arms earplugs were sold to the

military beginning in at least late 2003 and continued to be sold directly and

indirectly by Defendants to the military and other civilians through 2015, when Defendants discontinued the earplugs.

40.    Defendants' Dual-ended Combat Arms earplugs were also sold commercially to civilian users during this timeframe.

41.    Users, including Service Members, received Defendants' standard fitting instructions with respect to both ends of the Dual-ended Combat Arms earplug.  These instructions are the same for both ends—directing the user to grasp the earplug by the stem and insert it into the ear canal.

42.    The design of the Dual-ended Combat Arms earplugs is defective because it prevents a snug fit and proper seal in the ear canal of the user.

43.    When inserted according to Defendants' standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the users, including Service Members' ear canals and fold back; when the inward pressure on the earplug is released, the folded back flange returns to its original shape which can cause loosening of the seal in the user's ear canal and thus inadequate hearing protection.

44.    Defendants did not provide an adequate warning of this inherent defect and risk even though Defendants were aware of this defect and risk at all relevant times.

45.     Because the Dual-ended Combat Arms earplugs are symmetrical, following Defendants' standard fitting instructions results in a loosening of the fit and seal regardless of which side of the earplug is inserted into the ear canal.

### History of Testing:  January 2000

46.     Defendants began testing the Dual-ended Combat Arms earplugs in approximately December 1999 or January 2000.

47.     The purpose of this initial testing was to determine the NRR of the Dual-ended Combat Arms earplugs.

48.     Hearing protection devices are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound.

49.     Hearing protection devices must be tested and approved by the American National Standards Institute ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines.

50.     Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment, or attenuation.

51.     The higher the NRR number associated with a hearing protection device, the greater the potential for noise reduction.

52.     Earplugs, including the Dual-ended Combat Arms earplugs, are required to be sold with a stated NRR that accurately reflects the effectiveness of hearing protection.

53.     Defendants chose to conduct this testing at their own laboratory rather than at an outside, independent laboratory.

54.     Defendants' employees personally selected ten test subjects to test the Dual-ended Combat Arms earplugs, some of whom were employees of Defendants.

55.     In an effort to purportedly determine the NRR of the Dual-ended Combat Arms earplug, Defendants designed the January 2000 test to capture:  (1) each subject's hearing without an earplug inserted; (2) each subject's hearing with the open end of the Dual-ended Combat Arms earplug inserted (the unblocked position); and (3) each subject's hearing with the closed end of the Dual-ended Combat Arms earplug inserted (the blocked position).

56.     Defendants' personnel monitored the results of each subject as the test was being performed.  This type of monitoring allowed Defendants to stop the test if the desired NRR results were not achieved.

57.     Eight of the ten subjects were evaluated using the closed end of the Dual-ended Combat Arms earplugs.

58.    Testing of these eight subjects revealed an average NRR of 10.9, which was far below the intended and desired NRR necessary for adequate hearing protection for users, including Service Members.

59.    Because Defendants' personnel were monitoring the results of each subject as the test was being performed, and because the test results were well below the intended and desired NRR necessary for adequate hearing protection after the testing of these eight subjects, Defendants prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

60.    Defendants' personnel decided not to test the closed end of the Dual-ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR for adequate hearing protection in the other test subjects.

61.    In looking into the cause of the low NRR, Defendants' personnel determined that when the closed end of the earplug was inserted into the user's ear according to the standard fitting instructions, the basal edge of the third flange of the open end would press against the user's ear and fold backwards. When the inward pressure on the earplug was released, the flanges on the open end would return to their original shape and cause the earplug to loosen, often imperceptibly to the user.

62.     Given the symmetrical nature of the Dual-ended Combat Arms earplugs, this defect that prevents a snug fit and good seal occurs when either end of the earplug is inserted according to the standard fitting instructions.

63.     In January 2000, Defendants' personnel documented in the so-called "Flange Report" why the Dual-ended Combat Arms earplugs had failed to meet the necessary level of protection during testing; Defendants found that unless the opposing flange was folded back, the earplug would imperceptibly loosen and not provide the necessary level of hearing protection.

64.     Imperceptible loosening would allow dangerous sound waves past the earplug and damage the user's hearing.  This damage could result in hearing loss and tinnitus, which could be permanent in nature.

65.     As to testing on the open end of the Dual-ended Combat Arms, Defendants completed testing of all ten subjects and obtained a facially invalid result of -2 NRR, which would indicate that the open end of the earplug actually amplified sound, an unsound result with no valid scientific explanation.

66.     Defendants' represented the -2 NRR as a "0" NRR, which Defendants have displayed on the packaging of the Dual-ended Combat Arms earplugs since the earplugs were first launched.

67.    Defendants falsely tout the "0" NRR as a benefit of the Dual-ended Combat Arms earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection for impulse noise.

## History of Testing:  February 2000

68.    Upon identifying the fit and seal defect with their Dual-ended Combat Arms earplugs, Defendants re-tested the closed end of the Dual-ended Combat Arms earplug in February 2000 using a different insertion method, contrary to the ultimate instructions that would be provided to the military or users, including Service Members ("February 2000 testing").

69.    When testing the closed end of the Dual-ended Combat Arms earplugs, Defendants' personnel folded back the yellow flanges on the open end prior to inserting the closed end into the ear in order to create a tighter fit and seal.

70.    As a result of this reconfigured fitting procedure, Defendants achieved a "22" mean NRR on the closed end of the Dual-ended Combat Arms earplugs.

71.    Defendants have displayed this 22 NRR on the packaging of the Dual-ended Combat Arms earplugs since the earplugs were first "made available to consumers (both military and commercial)."

72.    Defendants, however, failed to properly warn military personnel and other users, including Service Members, of the Dual-ended Combat Arms earplugs

that the only potential way to achieve this purported NRR of 22 was to modify the Dual-ended Combat Arms earplug by folding the flanges back on the opposite end.

73.     The open end of the Dual-ended Combat Arms earplug was not re-tested using the reconfigured fitting procedure.

**Defendants' Representations and Omissions**

74.     As early as 2000, Defendants were aware of the dangerous design defects associated with their Dual-ended Combat Arms earplugs and the fact that the earplugs inadequately protected the hearing of users, including Service Members.

75.     Defendants knew the defective design of the Dual-ended Combat Arms earplugs could cause the earplugs to loosen in the user's ear—imperceptible to not only the user but also trained audiologists visually observing a user—thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believed that the earplug worked as intended.

76.     From 2003 to 2012, Defendants were the exclusive supplier of Dual-ended Combat Arms earplugs to U.S. military personnel.

77.     At the time when Defendants became the exclusive supplier of Dual-ended Combat Arms earplugs to U.S. military personnel, Defendants were aware of

the products' defects that failed to protect users, including Service Members, from loud sounds.

78.     Defendants did not adequately warn of the defects with the Dual-ended Combat Arms earplugs.

79.     Defendants did not adequately warn or instruct the users, including Service Members, of the Dual-ended Combat Arms earplugs how to properly wear and insert them to achieve their advertised and promoted NRR rating.

80.     Defendants expressly certified that the Dual-ended Combat Arms earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

81.     Defendants knew at the time they made their certifications that the Dual-ended Combat Arms earplugs did not comply with the MPID.

82.     The pertinent Salient Characteristics set forth in the MPID, which were uniform across all military Requests for Proposals, are, in relevant part, as follows:

> 2.1.1. Earplugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the user to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2.  The sound attenuation of both ends of the earplugs shall be tested in accordance with ANSI S3.19.

    **2.4** <u>**Workmanship**</u>**. The earplugs shall be free from all defects that detract from their appearance or impair their serviceability.**

    **2.5** <u>**Instructions**</u>**. Illustrated instructions explaining the proper use and handling of the earplugs shall be supplied with each unit.**

Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

83.    Defendants also knowingly used the results of the deliberately manipulated and flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms earplugs to the military with the representation that the earplugs possessed a "22" NRR in the closed position and would provide good fit and seal for users, including Service Members.

84.    Defendants included standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the Noise Control Act, and the MPID.

85.    Defendants' standard instructions for "proper use" of their Dual-ended Combat Arms earplugs do not instruct all users, including Service Members to use the "reconfigured" insertion method that was used in the February 2000 testing—a method that would require the user to fold back the flanges of the opposite end before inserting the earplug into the ear to achieve good fit and seal and adequate attenuation.

86.     Defendants' standard instructions for "proper use" of their Dual-ended Combat Arms earplugs do not warn users, including Service Members, that the subjects who tested the earplugs did not follow these standard instructions, or that the earplugs only received the 22 NRR because the subjects used the reconfigured insertion method, which required them to fold back the flanges of the opposite end before inserting the earplug into the ear.

87.     Instead, Defendants' standard instructions for "proper use" of their Dual-ended Combat Arms earplugs improperly direct users, including Service Members, to simply insert the earplugs into the ear canal.

88.     By failing to properly instruct users, including Service Members, of the Dual-ended Combat Arms earplug to fold back the flanges on the non-inserted end of the earplug before inserting the opposite end of the earplug into their ears (which is necessary to achieve the promoted 22 NRR), Defendants falsely overstated the amount of hearing protection provided by the closed end of the Dual-ended Combat Arms earplug.

89.     Defendants likewise misstated the amount of hearing protection provided by the open end of the Dual-ended Combat Arms earplug.

90.     Defendants' labeling, packaging, and marketing of the Dual-ended Combat Arms earplugs' standard instructions is misleading to the user and has caused thousands of users, including Service Members, to suffer significant hearing

loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-ended Combat Arms earplugs.

91.    Defendants' labeling, packaging and marketing of the Dual-ended Combat Arms earplugs' standard instructions with an NRR of "22" with corresponding instructions to simply insert the earplugs into the ear canal is misleading to the user and has caused thousands of users, including Service Members, to suffer significant hearing loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-ended Combat Arms earplugs.

92.    Despite knowing that their flawed testing of the Dual-ended Combat Arms earplugs to achieve the 22 NRR involved steps to manipulate the fit of the Dual-ended Combat Arms earplugs, Defendants' instructions for use for the Dual-ended Combat Arms earplugs do not instruct, and never have instructed, the user to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ear to achieve proper fit and seal necessary for adequate attenuation.

93.    Defendants' instructions that instead direct the user to simply insert the earplugs into the ear canal are facially inadequate.

94.    In product packaging, Defendants misled users, including Service Members, by providing a mere "fitting tip" that suggest that fitting could be

improved if the sealing rings of the outward directed plug are rolled back upon themselves. This "fitting tip" was misleading in that it did not inform users, including Service Members that folding back the flanges of the outer end was necessary to obtain proper fit and seal, and the level of NRR hearing protection as represented.

95.    Defendants were aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs they wanted on both ends of the Dual-ended Combat Arms earplugs, and Defendants continued to use these inaccurate NRRs to market and promote the earplugs for more than ten years without disclosing the design defect in the earplugs.

96.    At all times material hereto, Defendants committed a continuing fraud in obfuscating and failing to disclose facts that were known to them relating to the fraudulent testing they performed—facts that were not discovered and could not have been discovered by Plaintiff undertaking reasonable due diligence.

97.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

98.     Plaintiff could not have discovered that Plaintiff's hearing damage was caused by a defect in the Combat Arms earplugs, due to the fact that the defect involved "imperceptible loosening."

99.     Defendants are jointly and severally liable to Plaintiff for their individual and collective tortious acts.

100.    On July 26, 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device.

## **Plaintiff Michael Maher**

101.    Plaintiff joined the military on March 19, of 2004 at the age of 17 and was discharged in March 18, 2013.

102.    In 2006 and 2007, Plaintiff was deployed to Afghanistan. In 2008 and 2009, Plaintiff was deployed to Iraq.

103.    At the time of Plaintiff's deployment and during his pre-deployment training, the 3M Dual-ended Combat Arms earplugs were provided to Plaintiff and other users, including Service Members.

104.    The Dual-ended Combat Arms earplugs were provided to Plaintiff.

105.    The Dual-ended Combat Arms earplugs were provided to Plaintiff throughout service including: during initial training, during continued pre-

deployment training, while at shooting ranges, for use throughout service and while Plaintiff was deployed.

106.    Prior to joining the military, Plaintiff had no signs or symptoms of hearing loss or tinnitus.

107.    Plaintiff wore the Dual-ended Combat Arms earplugs during service at all appropriate times.

108.    Plaintiff wore the earplugs at Fort Benning and various military bases in the United States and in Afghanistan and Iraq while firing weapons.

109.    Plaintiff was provided additional Dual-ended Combat Arms earplugs throughout service.

110.    Plaintiff was never instructed to fold back the opposing flanges on the opposite side of the earplug being inserted for hearing protection.

111.    Plaintiff was first diagnosed with noise induced hearing issues in approximately 2017.

## CAUSES OF ACTION

## COUNT I
## DESIGN DEFECT - NEGLIGENCE

112.    At all times relevant to this action, Defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-ended Combat Arms earplugs with reasonable and due care for the safety and well-being

of its users, including Service Members, including Plaintiff and other U.S. military servicemembers who used the Dual-ended Combat Arms earplugs.

113.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

114.    Defendants knew that the Dual-ended Combat Arms earplugs would be used by users, including Service Members, including Plaintiff.

115.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

116.    When the Dual-ended Combat Arms earplug is inserted into the ear according to standard fitting instructions provided by Defendants, a proper seal is not formed with the ear canal.

117.    The defect has the same effect when either end is inserted because the earplugs are symmetrical.  In either scenario, the effect is that the earplug may not maintain a tight seal in some users, including Service Members' ear canals such that dangerous sounds can bypass the earplug altogether, thereby posing serious risk to the user's hearing, unbeknownst to him or her.

118.    Upon information and belief, Defendants failed to exercise reasonable and due care under the circumstances and therefore breached this duty in the following ways:

a.  Defendants failed to design the Dual-ended Combat Arms earplugs in a manner that would result in an NRR of "22" when used with the closed, olive end inserted, as promoted and marketed by Defendants and as provided by them in the earplugs' standard fitting instructions;

b.  Defendants' representations also overstated the attenuation benefit provided by the yellow or "open" end of the earplugs.  The yellow or open end both attenuated low-level sound more than as stated by Defendants, and also due to its defective design, failed to provide the non-linear level dependent attenuation protection as represented by Defendants.

c.  Defendants failed to design the Dual-ended combat Arms earplugs in a manner that would safely prevent against the injuries claimed by Plaintiff;

d.  Defendants failed to properly and thoroughly test the Dual-ended Combat Arms earplugs;

e.  Defendants failed to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms earplugs;

f.  Defendants designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

g.  Defendants designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without providing adequate or proper instructions to avoid the harm that could foreseeably occur because of using the earplugs in the manner the Defendants' standard fitting instructions directed;

h.  Defendants designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs even though their risks and dangers outweighed any purported benefit;

i.  Defendants failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-ended Combat Arms earplugs; and

j.  Defendants negligently continued to manufacture and distribute the Dual-ended Combat Arms earplugs to the U.S. military after

Defendants knew or should have known of its adverse effects and/or the availability of safer designs.

k.  Defendants assumed the duty to properly warn of the defects and risks of the Dual-ended Combat Arms earplugs by providing instructions and information related to the benefits and effectiveness of the earplugs, although grossly misleading to the military and users, including Service Members.  As such, Defendants were negligent in failing to provide adequate warnings and instructions.

119.    Defendants knew or should have known that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the U.S. military users, including Service Members, who used the earplugs, including Plaintiff.

120.    The Dual-ended Combat Arms earplugs were dangerous when used by users, including Service Members, including Plaintiff, who used them with common knowledge of the products' characteristics and according to their common usage.

121.    The Dual-ended Combat Arms earplugs were dangerous when used by users, including Service Members, including Plaintiff, who followed the instructions provided by Defendants.

122.    Defendants knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were used by Plaintiff.

123.    At the time the Dual-ended Combat Arms earplugs left the possession of Defendants, the Dual-ended Combat Arms earplugs were in a condition that made them unreasonably dangerous to the users, including Service Members.

124.    At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were in a condition that made them unreasonably dangerous to the users, including Service Members.

125.    The 3M Dual-ended Combat Arms earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

126.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which the earplugs were intended.

127.    As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers of the Dual-ended Combat Arms earplugs, Defendants had superior knowledge of the Dual-ended Combat Arms earplugs and owed a duty of care to Plaintiff.

128.    It was foreseeable that Defendants' actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to Plaintiff.

129.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's personal injuries—specifically, Plaintiff's hearing loss and tinnitus.

130.    Defendants' conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because Defendants designed, manufactured, tested, sold, and distributed the defective Dual-ended Combat Arms earplugs used by Plaintiff.

131.    As a direct and proximate result of Defendants' negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff suffered serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

132.    As a direct and proximate result of Defendants' negligence, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## DESIGN DEFECT – STRICT LIABILITY

133.    Defendants are engaged in the business of designing, manufacturing, and selling the Dual-ended Combat Arms earplugs.

134.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

135.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

136.    The Dual-ended Combat Arms earplugs are defective in that they fail to contain an adequate warning of the significant and dangerous risks of the earplugs.

137.    The Dual-ended Combat Arms earplugs are defective in that the earplugs contain inadequate and/or improper instructions for use.

138.    The Dual-ended Combat Arms earplugs are defective because their risks and dangers outweighed any purported benefit.

139.    Defendants knew that the defective condition of the Dual-ended Combat Arms earplugs made them unreasonably dangerous to users, including Service Members, who used the device, including Plaintiff.

140.    The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used it as it was intended to be used, including Plaintiff.

141.    The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device, including Plaintiff, because the design of the Dual-ended Combat Arms earplugs allows for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

142.    Defendants knew of the Dual-ended Combat Arms earplugs' defective design at the time the earplugs were provided to Plaintiff.

143.    At the time the Dual-ended Combat Arms earplugs left Defendants' possession, the Dual-ended Combat Arms earplugs were defective and were in a condition that made them unreasonably dangerous to the users, including Service Members, who used them.

144.    At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were defective and were in a

condition that made them unreasonably dangerous to the users, including Service Members, who used them.

145.    The 3M Dual-ended Combat Arms earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

146.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which the earplugs were intended.

147.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

148.    Defendants' conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendants designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

149.    As a direct and proximate result of Defendant's defective design of the Dual-ended Combat Arms earplugs, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

150.    As a direct and proximate result of Defendants' defective design of the Dual-ended Combat Arms earplugs, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT III
## FAILURE TO WARN – NEGLIGENCE

151.    At all times relevant to this action, Defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-ended Combat Arms earplugs with reasonable and due care for the safety and wellbeing of Users, including Service Members, including Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

152.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

153. The Dual-ended Combat Arms earplugs are defective, in part, in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user we incorrectly believes that the earplug is working as intended.

154. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, of the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

155. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendants' standard instructions for insertion, but rather the "reconfigured" insertion method requiring the user to fold back the flanges of the opposite end before inserting the plug into the ear.

156. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that

following Defendants' standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to him.

157.    Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that the Dual-ended Combat Arms earplugs had not been adequately or properly tested.

158.    The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer, including Plaintiff, would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendants.

159.    Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including but not limited to instructions directing the users, including Service Members, to fold back the flanges on the non-inserted end of the plug before inserting the opposite end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

160.    Defendants' failure to warn of the design defect of the Dual-ended Combat Arms earplugs and/or their associated risks and dangers was the proximate cause of Plaintiff's hearing loss and tinnitus.

161.    As a direct and proximate result of Defendants' failure to warn, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

162.    As a direct and proximate result of Defendants' failure to warn, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## FAILURE TO WARN – STRICT LIABILITY

163.    Defendants are engaged in the business of designing, manufacturing, and selling the Dual-ended Combat Arms earplugs.

164.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

165.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around

the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

166.    The Dual-ended Combat Arms earplugs are defective and unreasonably dangerous even if Defendants exercised all proper care in the preparation and sale of the product.

167.    Defendants knew that the defective condition of the Dual-ended Combat Arms earplugs made them unreasonably dangerous to users, including Service Members, specifically Plaintiff.

168.    The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

169.    The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device, including Plaintiff, because the design of the Dual-ended Combat Arms earplugs allows for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to users, including Service Members, as well as specifically to Plaintiff's hearing in a manner unbeknownst to him.

170.    Defendants knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

171.    At the time the Dual-ended Combat Arms earplugs left Defendants' possession, the Dual-ended Combat Arms earplugs were defective and were in a

condition that made them unreasonably dangerous to the users, including Service Members, who used them, including Plaintiff.

172.    At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were defective and were in a condition that made them unreasonably dangerous to the users, including Service Members, who used them, including Plaintiff.

173.    The Dual-ended Combat Arms earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

174.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which the earplugs were intended.

175.    The Dual-ended Combat Arms earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings, or in the alternative, contained inadequate warnings and/or instructions, of the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

176.    The Dual-ended Combat Arms earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings or

instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendants' standard instructions for insertion, but rather the "reconfigured" insertion method requiring the user to fold back the flanges of the opposite end before inserting the plug into the ear.

177.    The Dual-ended Combat Arms earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendants standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to him.

178.    The Dual-ended Combat Arms earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that the Dual-ended Combat Arms earplugs had not been adequately or properly tested.

179.    The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer, including Plaintiff, would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendants.

180.    Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including but

not limited to instructing users, including Service Members, to fold back the flanges on the non-inserted end of the plug before inserting the opposite end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

181.   The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the design of the earplugs allowed for dangerous sounds to bypass the earplug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

182.   Defendants' conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendants designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

183.   As a direct and proximate result of Defendants' failure to warn, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

184.   As a direct and proximate result of Defendants' failure to warn, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**

185.    Through Defendants' public statements, descriptions of the Dual-ended Combat Arms earplugs, and promises relating to the Dual-ended Combat Arms earplugs, Defendants expressly warranted, among other things, that the Dual-ended Combat Arms earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

186.    These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms earplugs); (iii) verbal assurances made by Defendants' consumer relations personnel about the safety of the Dual-ended Combat Arms earplugs, which also downplayed the risks associated with the Dual-ended Combat Arms earplugs; and (iv) false, misleading, and inadequate written information and packaging supplied by Defendants.

187.    When Defendants made these express warranties, they knew the purpose(s) for which the Dual-ended Combat Arms earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

188.    Defendants drafted the documents and/or made statements upon which these warranty claims were based and, in doing so, defined the terms of those warranties.

189.    The Dual-ended Combat Arms earplugs do not conform to Defendants' promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

190.    Plaintiff further alleges that all of the aforementioned written materials are known to Defendants and in their possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendants and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

191.    As a direct and proximate result of Defendants' breach of the express warranties, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

192.    As a direct and proximate result of Defendants' breach of the express warranties, Plaintiff requires and/or will require more healthcare and services and

did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI
## BREACH OF IMPLIED WARRANTIES

193.    At all times material, Defendants were merchants with respect to the Dual-ended Combat Arms earplugs.

194.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

195.    At the time Defendants marketed, sold, and distributed the Dual-ended Combat Arms earplugs, Defendants knew of the use for which the Dual-ended Combat Arms earplugs were intended, impliedly warranted the Dual-ended Combat Arms earplugs to be fit for a particular purpose, and warranted that the Dual-ended Combat Arms earplugs were of merchantable quality and effective for such use.

196.    Defendants knew, or had reason to know, that Plaintiff would rely on Defendants' judgment and skill in providing the Dual-ended Combat Arms earplugs for their intended use.

197.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Dual-ended Combat Arms earplugs were of merchantable quality, safe, and effective for their intended use.

198.    Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for their intended use, because the Dual-ended Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

199.    The Dual-ended Combat Arms earplugs were defectively designed and manufactured and were distributed and sold without reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to users, including Service Members, including Plaintiff.

200.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

201.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and

believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII
## FRAUDULENT MISREPRESENTATION

202.    Defendants falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms earplugs had been properly tested and were free from all defects.

203.    Defendants falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms earplugs functioned properly and as promoted with the closed side having an NRR of 22 and the open side having an NRR of 0.

204.    Defendants intentionally manipulated testing of the Dual-ended Combat Arms earplugs, resulting in false and misleading NRRs and improper fitting instructions.

205.    The representations made by Defendants were, in fact, false.

206.    When said representations were made by Defendants, Defendants knew the representations to be false and willfully, wantonly and recklessly disregarded whether the representations were true.

207.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff and the public in general and were made with the intent of inducing Plaintiff and the public in general to recommend, purchase, and/or use the Dual-ended Combat Arms earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

208.    At the time the aforesaid representations were made by Defendants, and at the time Plaintiff used the Dual-ended Combat Arms earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

209.    In reliance upon said representations, Plaintiff was induced to and did use Dual-ended Combat Arms earplugs, thereby sustaining severe and permanent personal injuries.

210.    Defendants knew or should have known that the Dual-ended Combat Arms earplugs had not been sufficiently tested, were defective in nature, and/or lacked adequate and/or sufficient warnings and instructions.

211.    Defendants knew or should have known that the Dual-ended Combat Arms earplugs had a potential to, could, and would cause severe and grievous injury to the users, including Service Members, of said product.

212.    Defendants brought the Dual-ended Combat Arms earplugs to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

213.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

214.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII
## FRAUDULENT CONCEALMENT

215.    At all times relevant, Defendants misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

216.    Defendants knew or were reckless in not knowing that their representations were false.

217.   In representations to Plaintiff, Defendants fraudulently concealed and intentionally omitted the following material information:

a.   that testing of the Dual-ended Combat Arms earplug was flawed;

b.   that testing of the Dual-ended Combat Arms earplug was deliberately manipulated;

c.   the amount of hearing protection provided by the Dual-ended Combat Arms earplug;

d.   that the standard instructions for use would not provide the promised hearing protection;

e.   that Defendants were aware of the defects in the Dual-ended Combat Arms earplug;

f.   that the Dual-ended Combat Arms earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

g.   that the Dual-ended Combat Arms earplug was designed defectively;

h.   that the Dual-ended Combat Arms earplug was designed negligently; and

i.   that the Dual-ended Combat Arms earplug was designed improperly.

218.   Defendants were under a duty to disclose to Plaintiff the defective nature of the Dual-ended Combat Arms earplugs.

219.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-ended Combat Arms earplugs, including Plaintiff, in particular.

220.   Defendants' concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-ended Combat Arms earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the Dual-ended Combat Arms earplug, and actions thereon, and to cause him or her to purchase and/or use the product.  Defendants knew that Plaintiff had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Dual-ended Combat Arms earplugs, as set forth herein.

221.   Plaintiff reasonably relied on facts revealed, which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

222.   As a direct and proximate result of the foregoing concealments and omissions, Plaintiff was caused to suffer serious and dangerous side effects,

including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

223.    As a direct and proximate result of the foregoing concealments and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

224.    Defendants had a duty to represent to Plaintiff and the public in general the truth of the risks and harms associated with the Dual-ended Combat Arms earplugs as well as truth of their efficacy.

225.    Defendants represented to Plaintiff and the public in general that the Dual-ended Combat Arms earplugs had been properly tested and found to be effective.

226.    Defendants represented to Plaintiff and the public in general that the instructions for use of their Dual-ended Combat Arms earplugs were proper and adequate and would result in the promoted and advertised NRR.

227.    The representations made by Defendants were, in fact, false.

228.    Defendants breached their duty by falsely representing to Plaintiff and the public in general that the Dual-ended Combat Arms earplugs had been properly tested and found to be effective when Defendants knew or should have known that the Dual-ended Combat Arms earplugs had not been properly or adequately tested, and Defendants had manipulated the results of the testing.

229.    Defendants breached their duty by falsely representing to Plaintiff and the public in general that the Dual-ended Combat Arms earplugs had been properly tested and found to be effective when Defendants knew or should have known that the design of the Dual-ended Combat Arms earplugs was defective.

230.    Defendants breached their duty by falsely representing to Plaintiff and the public in general that the instructions for use of their Dual-ended Combat Arms earplugs were proper and adequate and would result in the promoted and advertised NRR when Defendants knew that these statements were false.

231.    Defendants were aware that their testing procedures were unlawfully manipulated.

232.    Defendants were aware that their fitting instructions were not adequate or proper.

233.    Defendants failed to exercise ordinary care in the representation of the Dual-ended Combat Arms earplugs during their manufacturing, sale, testing,

quality assurance, quality control, and/or distribution into interstate commerce, in that Defendants negligently misrepresented the Dual-ended Combat Arms earplugs' safety and efficacy.

234.    As a result of the foregoing negligent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

235.    As a direct and proximate result of the foregoing negligent misrepresentations, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT X
## FRAUD AND DECEIT

236.    Defendants conducted unlawful and improper testing on the Dual-ended Combat Arms earplugs.

237.    As a result of Defendants' unlawful and improper testing, Defendants blatantly and intentionally distributed false information that overstated the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

238.    As a result of Defendants' unlawful and improper testing, Defendants intentionally omitted and misrepresented certain test results to Plaintiff.

239.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

240.    The information distributed to Plaintiff by Defendants contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms earplugs.

241.    These representations were all false and misleading.

242.    Upon information and belief, Defendants intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

243.    It was the purpose of Defendants in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplug and induce the public and/or Plaintiff to purchase, request,

dispense, recommend, and/or continue to use the Dual-ended Combat Arms earplugs.

244. Defendants made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms earplugs were fit and safe for use.

245. These representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

246. These representations and others made by Defendants were made with the intention of deceiving and defrauding Plaintiff, were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase and/or use the Dual-ended Combat Arms earplugs.

247. Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

248. Defendants willfully and intentionally failed to disclose material facts regarding the dangerous and serious safety concerns of the Dual-ended Combat

Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs.

249.   Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendants and purchase, use, and/or rely on the Dual-ended Combat Arms earplugs.

250.   Plaintiff did in fact rely on and believe the Defendants' representations to be true at the time Defendants were made and was thereby induced to use and rely on the Dual-ended Combat Arms earplugs.

251.   At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

252.   Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

253.   Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs,

Plaintiff would not have used and/or relied on the Dual-ended Combat Arms earplugs.

254.    Defendants' aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

255.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

256.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XII
## GROSS NEGLIGENCE

257.    The wrongs committed by Defendants as set forth herein were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights

of others, the public, and Plaintiff, for which the law would allow the imposition of punitive damages (and which Plaintiff seeks, as set forth below).

258.   Such punitive damages are appropriate given Defendants' conduct, as further alleged herein, which includes the failure to comply with applicable guidelines and standards, including but not limited to ANSI,  OSHA and MPID guidelines and standards, which recklessly caused substantial injuries to Plaintiff (or, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others), of which Defendants were actually, subjectively aware of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, or included a material representation that was false, with Defendants knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

259.   Plaintiff relied on Defendants' representations and/or omissions and suffered injuries as a proximate result of this reliance.

260.   Plaintiff seeks to assert claims for punitive damages in an amount within the jurisdictional limits of the Court, as set forth below.

261.   Plaintiff also alleges that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence

that proximately caused the injuries to Plaintiff. In that regard, Plaintiff seeks punitive damages in amounts that would punish Defendants for their conduct and that would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## PUNITIVE DAMAGES

262.    Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

   a.   By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs;

   b.   By concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs;

   c.   By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms earplugs; and

d.  By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

263.   Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms earplugs were defective and/or caused his injuries.

264.   Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to Plaintiff.

265.   Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

266.   Furthermore, the running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

267.    Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects in the Dual-ended Combat Arms earplugs.

268.    Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff that their Dual-ended Combat Arms earplugs were the cause of his injuries.

269.    Through their ongoing affirmative misrepresentations and omissions, Defendants' committed continual tortious and fraudulent acts.

270.    As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

271.    Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms earplugs, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms earplugs.

272.    Additionally, pursuant to the Service Members Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations or statute of repose applicable herein. *See* 50 U.S.C. § 3936

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

i.   That process issue according to law;

ii.  That Defendants be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiff and against Defendants for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

iii. Pain and suffering (past and future);

iv.  Wage loss (past and future);

v.   Loss of earnings and loss of earning capacity;

vi.  Medical expenses (past and future);

vii. Loss of enjoyment of life (past and future);

viii. Mental anguish and distress (past and future);

ix.  Disfigurement (past and future);

x.   Physical impairment (past and future);

xi.  Awarding Plaintiff their costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees;

xii.  Punitive or exemplary damages in such amounts as may be proven at
trial; and

xiii.  Awarding Plaintiff such other and further relief as may be just and
proper.

Dated: August 1, 2019            Respectfully submitted,

s/Edward A. Wallace
Edward A. Wallace
Michelle Perkovic
Wexler Wallace LLP
55 W. Monroe St., Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
eaw@wexlerwallace.com
mp@wexlerwallace.com

*Attorneys for Plaintiff*